UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAD GEIKEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2442-B |
| | § | |
| ANTENEH TESFAYE WORKU, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff's Motion for Final Default Judgment. Doc. 15. For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

### I.

### BACKGROUND

This is a breach of contract case. Plaintiff Chad Geiken and Defendant Anteneh Tesfaye Worku were friends. Doc. 1, Pl.'s Orig. Compl. ¶ 7. When Defendant's consulting business, OneSolution Consulting, had trouble with cash flow, Defendant requested a loan from Plaintiff. *Id.* The two worked out an arrangement where Plaintiff loaned Defendant money, Defendant used it to pay retained consultants to perform consulting services, and Plaintiff would later receive 70% of the difference between the amount paid to consultants and the amount eventually received from OneSolution Consulting's clients. *Id.* ¶ 8. This arrangement continued for several years. *Id.* ¶ 9. Defendant began expanding the number of OneSolution's retained consultants and requested more loans from Plaintiff to finance them. *Id.* To accommodate Defendant's requests, Plaintiff began to

deplete his savings account and borrow from his individual retirement account (IRA)—administered by Equity Trust Company. *Id.* ¶ 10.

Defendant stopped making payments for the loans in March 2011. *Id.* ¶ 11. Plaintiff asked Defendant why the payments had stopped, and Defendant represented that his company was in the process of switching to a new system of accounting that would cure the delay in repayment of the loans. *Id.* Plaintiff eventually learned in 2014 that Defendant had dissolved his business and moved it to India. *Id.* ¶ 12. Plaintiff confronted Defendant about the move, and Defendant agreed to execute a promissory note payable directly to Plaintiff's IRA account for the portion of the loans that came from that account. *Id.* ¶ 13. In September 2014, Defendant executed the Promissory Note (Note) in the original principal amount of $742,713.00 payable on December 2, 2014. *Id.* ¶ 14. Defendant did not execute a promissory note with regard to the money loaned from Plaintiff's savings account, but he did acknowledge the debt. *Id.* ¶ 13.

When the Note matured, Defendant failed to make any payments. *Id.* ¶ 15. Beginning in 2015, Plaintiff repeatedly demanded payment of the Note. *Id.* ¶ 16. While Defendant acknowledged the indebtedness, he refused to pay anything because he claimed he had insufficient assets. *Id.* Besides Defendant's failure to pay the Note, Plaintiff asserts that Defendant also failed to pay for the loans made from Plaintiff's savings account. *Id.* ¶ 18. As a result of Defendant's failure to pay, Plaintiff brought this suit against Defendant in July 2015 and alleged the following causes of action: (1) breach of contract; (2) quantum meruit and unjust enrichment; (3) fraud; (4) violations of the Texas Theft Liability Act; and (5) money had and received. *Id.* ¶¶ 19–29, 32–50. Plaintiff requests that he be awarded payment under the Note, payment for the money loaned from Plaintiff's savings account, exemplary damages, attorneys' fees and expenses, pre- and post-judgment interest, and costs

of court. *Id.* at 10.

After having difficulty serving Defendant, the Court granted Plaintiff's Motion for Substituted Service. Doc. 10, Order. Defendant was served on September 2, 2016. Doc. 11, Summons Returned Executed as to Anteneh Tesfaye Worku. After Defendant failed to answer or make an appearance in the case, Plaintiff requested that the Clerk issue default on November 2, 2016, and the Clerk did so on the same day. Docs. 13, Request for Clerk to Issue Entry of Default, 14, Clerk's Entry of Default. Plaintiff then filed his Motion for Default Judgment on November 16, 2016. Doc. 15. Defendant has yet to file an answer or appear in this case. The Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When "all elements of [a] cause of action are present by implication," a complaint is "well-pleaded" for default judgment purposes. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015).

In determining whether a default judgment should be entered against a defendant, courts

have developed a two-part analysis. *See, e.g.*, *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2, 3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

## III.

## ANALYSIS

*A.    Whether Default Judgment is Appropriate*

In considering the six factors outlined in *Lindsey*, the Court finds that they weigh in favor of granting a default judgment. Defendants have not filed any responsive pleadings in the present matter. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Defendant's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at

893. Indeed, Defendant had over seven months since being served to respond to Plaintiff's Complaint and over five months to respond to the present Motion, yet he still has filed nothing to explain his silence. *Cf. Elite v. KNR Grp.*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (unpublished table decision)(holding default judgment was inappropriate where the defendant sent a letter to the court explaining that its failure to appear was due to financial privation). Defendant's complete failure to respond during this time therefore "mitigat[es] the harshness of a default judgment" against him. *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is appropriate under these circumstances.

B.      *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

Due to his default, Defendant is deemed to have admitted the allegations set forth in Plaintiff's Complaint. Nonetheless, the Court must review the pleadings to determine whether Plaintiff can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

As discussed above, Plaintiff asserted the following claims: (1) breach of contract; (2) quantum meruit and unjust enrichment; (3) fraud; (4) violations of the Texas Theft Liability Act; and (5) money had and received. Doc. 1, Pl.'s Orig. Compl. ¶¶ 19–29, 32–50. The Court will discuss each claim separately below.

1. Breach of Contract

Plaintiff appears to assert a breach of contract claim based on two contracts. Doc. 1, Pl.'s Orig. Compl. ¶¶ 19–23. The first contract is the Note, which appears to cover the loans from Plaintiff's IRA account.[1] *Id.* ¶ 20. The second is an implied contract, which covers the loans made from Plaintiff's savings account.[2] *Id.* ¶¶ 18, 20, 25. The Court will first address the Note before turning to the implied contract.

    *i. Loans Covered by the Note*

Under Texas law, a plaintiff suing for recovery on a promissory note does not have to prove all essential elements of a breach of contract claim, but rather need only establish: (1) that the note existed; (2) that Defendant signed the note; (3) that Plaintiff legally owned and held the Note; (4) that default occurred; and (5) that a certain balance remains due and payable on the Note. *Scogin v. Tex. Eagle Ford Shale Magazine*, No. 2:14-cv-478, 2015 WL 12942057, at *5 (S.D. Tex. Dec. 23, 2015) (citing *F.D.I.C. v. Foxwood Mgmt. Co.*, 15 F.3d 180, No. 92-2434, 1994 WL 24911, at *6 (5th Cir. Jan. 14, 1994) (unpublished table decision)); *Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d

---

[1] While the Note was made payable to Plaintiff's IRA account, Plaintiff does not explicitly state that the $742,713.00 covered by the Note came only from Plaintiff's IRA account. This distinction, however, does not change the outcome of the Court's decision, so in its analysis, the Court will refer to the loans encompassed by the Note as those coming from the IRA account and the loans not encompassed by the Note as coming from Plaintiff's savings account.

[2] Plaintiff does not explicitly state that he seeks to recover the money loaned from his savings account under a breach of an implied contract theory. Rather, in his claim for quantum meruit and unjust enrichment, he states that "[a]n implied contract existed between Plaintiff and Defendant." Because the money from the IRA account is covered by an express contract, it follows that the money from Plaintiff's savings account is covered by the referenced implied contract. Furthermore, under Plaintiff's breach of contract claim, he indicates that he seeks recovery for the loans both covered by the Note and from his savings account. Doc. 1, Pl.'s Orig. Compl. ¶ 20. Therefore, the Court construes Plaintiff's Complaint as asserting a breach of an implied contract claim with regard to the money loaned from Plaintiff's savings account.

508, 512 (Tex.App.—El Paso 2014, no pet.).

Here, Plaintiff attaches a copy of the Note to his Complaint and Motion for Default Judgment and states that it is a true and correct copy of it. Doc. 1, Pl.'s Orig. Compl. ¶ 14; Doc. 1-1, Promissory Note, Ex. A; *see also PlainsCapital Bank v. Anaya-Gomez*, No. 7:14-cv-00729, 2017 WL 971655, at *3 (S.D. Tex. Mar. 14, 2017) (finding that a promissory note existed for purposes of default judgment when a plaintiff attached a copy of it to his motion). As to Defendant's signature, Plaintiff states that Defendant executed the Note, and the Note itself bears Defendant's signature. Doc. 1, Pl.'s Orig. Compl. ¶ 14; Doc. 1-1, Promissory Note, Ex. A; *see also PlainsCapital Bank*, 2017 WL 971655, at *3 (finding, for purposes of default judgment, a note bearing the defendant's signature to be sufficient for this element).

Regarding the third element—ownership of the Note—Plaintiff states that he is the beneficial owner of the Note. Doc. 1, Pl.'s Orig. Compl. ¶ 17. The Note was made payable directly to Plaintiff's IRA account, "Equity Trust Company Custodian FBO Chad Geiken." Doc. 1-1, Promissory Note, Ex. A. Plaintiff asserts that once Defendant defaulted, Plaintiff demanded payment on the Note, and that Defendant has still failed to pay. Doc. 1, Pl.'s Orig. Compl. ¶¶ 16–17. Through these allegations, it can be implied that the Note did not change ownership after its execution. Thus, it appears from the face of the Complaint that tracing ownership is not an issue, and Plaintiff is the legal owner and holder of the Note.[3]

And finally, regarding the amount payable under the Note, the Note states that a total sum

---

[3] Even though Plaintiff deems himself the "beneficial" owner of the Note, it appears from his other assertions that he intended to deem himself the legal owner and labeled himself the beneficial owner only because the Note was payable directly to his account "for the benefit" of himself.

of $800,000 was payable on December 2, 2014, and because that date has passed, that amount is now due and owing. Doc. 1-1, Promissory Note, Ex. A. In Plaintiff's Complaint, he breaks the amount down into principal and interest. Doc. 1, Pl.'s Orig. Compl. ¶ 17. Plaintiff states that "the total amount of principal owing under the . . . Note is $742,713, and the total amount of accrued but unpaid interest owing under the . . . Note is $29,708.52. Interest continues to accrue on the . . . Note until paid at the rate of $162.78 per diem." Doc. 1, Pl.'s Orig. Compl. ¶ 17. Plaintiff has properly pled that a certain balance is due and owing on the Note. *See PlainsCapital Bank*, 2017 WL 971655, at *3. In sum, there is a sufficient basis in the pleadings for recovery on the Note.[4] *See Nishimatsu Constr.*, 515 F.2d at 1206.

        ii.       *Loans Covered by an Implied Contract*

"To state a claim for breach of an implied contract, a plaintiff must plead the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendant, and damages resulting from the breach." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015). A valid implied contract exists when the following elements are met: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each

---

[4] The Court notes that Plaintiff did not explicitly list out the elements necessary to recover under a promissory note. In his Compliant, Plaintiff addressed only the elements necessary for a standard breach of contract claim. Doc. 1, Pl.'s Compl. ¶¶ 19–23. This, however, is not fatal to his claim because the Fifth Circuit has indicated that when examining a complaint in light of a motion for default judgment, a complaint need not include every element of the plaintiff's prima facie case to satisfy Rule 8 and instead, elements can be present through implication. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015). This is because the purpose of Rule 8's pleading requirements is "'to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Id.* at 498 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1955)). Here, Plaintiff did not explicitly state each element required for a claim to recover under a promissory note, but because it is evident that his breach of contract claim rests on Defendant's failure to pay under the terms of the Note and because each element is evident on the face of the Complaint, Defendant had fair notice of what Plaintiff's claim was concerning the Note, and the Court finds Plaintiff's Complaint sufficient for default-judgment purposes. *See id.* at 500.

party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Id.* (quoting *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). "[T]here must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Plotkin*, 304 S.W.3d at 477 (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) (noting that mutual agreement can be implied from the parties' conduct and course of dealing)).

Taking the facts in the Complaint as true, Plaintiff establishes that a valid implied contract existed between the Parties. After Defendant requested a loan, Plaintiff (1) offered to lend Defendant money; and (2) Defendant accepted the offer and promised to pay Plaintiff 70% of the difference between the money paid to consultants and the full payment eventually received. Doc. 1, Pl.'s Orig. Compl. ¶¶ 7–9. Furthermore, as can be implied from their course of dealing and performance under this arrangement for "many years," parties (3) understood the terms; (4) consented to the terms; and (5) executed the contract with the intent that it be binding. *Id.*

As Plaintiff has established a valid implied contract, the Court now turns to whether Defendant breached the implied contract. The Court is satisfied that Plaintiff successfully stated a claim because: (1) there was a valid contract; (2) Plaintiff performed under the contract by continuing to lend Defendant money;[5] (3) Defendant breached the contract by stopping the 70%

---

[5] While it can be inferred from the Complaint that an implied contract existed, the exact contours of such a contract are less clear. The main issue is that the parties did not seem to contemplate a definitive end to their obligations because Plaintiff asserts that Defendant continued to ask for ever-increasing loans. Doc. 1, Pl.'s Orig. Compl. ¶ 9. It appears, then, that they created a contract for successive performances.

The Texas Business and Commerce Code provides that "[w]here the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." Tex. Bus. & Com. Code Ann. § 2.309(b). But "[t]ermination of

payments; and (4) Plaintiff was damaged because he is still owed $442,460.00. Doc. 1, Pl.'s Orig. Compl. ¶¶ 9–11, 13, 17. In sum, Plaintiff has pled the essential elements of a breach of an implied contract claim and there is sufficient basis in the pleadings for recovery. *See Nishimatsu Constr.*, 515 F.2d at 1206.

2. Fraud

To recover for common law fraud, Plaintiff must show:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). The Court will also consider whether Plaintiff's claim comports with the heightened pleading standards of Rule 9(b): "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9, the plaintiff must "specify the statements contended to be fraudulent, identity the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Put another way, the plaintiff must detail the who, what, when, where, and how of the alleged fraud. *Id.*

---

a contract by one party . . . requires that reasonable notification be received by the other party." *Id.* § 2.309(c). It does not appear that Defendant attempted to terminate the contract. Indeed, when Defendant stopped making payments, he promised Plaintiff that he would pay him back after the company switched to a new system of accounting. Doc. 1, Pl.'s Orig. Compl. ¶ 11. Furthermore, after Plaintiff discovered that the company had been dissolved, Defendant nonetheless acknowledged the debt he owed to Plaintiff for the loans from his savings account. *Id.* ¶ 13. It appears, then, that the implied contract under which the parties operated covers all loans made by Plaintiff from his savings account.

at 178.

Here, Plaintiff alleges the following: (1) Defendant misrepresented that his loans would be repaid after Defendant received payment from his clients and that Plaintiff's lack of payment was because Defendant's clients were not paying Defendant; (2) these representations were false because Defendant continued to receive money from clients and, instead of paying Plaintiff, Defendant used it for other purposes, and because when some statements were made, Defendant had already dissolved his business and moved it to India; (3) Defendant knew his statements were false because he continued to accept loans from Plaintiff and represent that the reason for his failure to repay Plaintiff was because his clients weren't paying him, even after Defendant had dissolved his business; (4) Defendant made the statements with the intent to deceive Plaintiff; (5) Plaintiff reasonably relied to his detriment as he continued to make loans to Defendant because he thought the company was still in business; and (6) Plaintiff suffered actual damages in the amount of the money loaned due to Defendant's fraudulent statements and in having to delay bringing his lawsuit against Defendant. Doc. 1, Pl.'s Orig. Compl. ¶¶ 32–39.

Plaintiff's allegations satisfy each element of a common law fraud claim under the Rule 8 and Rule 9 pleading standards. Therefore, there is a sufficient basis in the pleadings for Plaintiff to recover. *See Nishimatsu Constr.*, 515 F.2d at 1206. Plaintiff requests both actual damages and exemplary damages, but those will be discussed in a separate section below.

3. Violations of the Texas Theft Liability Act

Plaintiff alleges that Defendant violated the Texas Theft Liability Act (TTLA). Doc. 1, Pl.'s Orig. Compl. ¶¶ 40–46. To prevail on a claim under the TTLA, a plaintiff must demonstrate that (1) he had a possessory right to property or was the provider of services; (2) the defendant unlawfully

appropriated property or unlawfully obtained services in violation of certain sections of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. *See Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-cv-3428-L, 2013 WL 1482544, at *3 (N.D. Tex. Apr. 10, 2013) (citing Tex. Civ. Prac. & Rem.Code §§ 134.002(2), 134.003; Tex. Penal Code § 31.03(a)). Furthermore, the plaintiff must allege that the defendant possessed an intent to deprive the plaintiff of his property permanently or for an extended period of time. Tex. Penal Code § 31.03. "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." *Id.* § 31.01. "Appropriation of property is unlawful if it is without the owner's effective consent." *Id.* § 31.01(3)(b)(1). And "property" is (a) real property; (b) tangible or intangible personal property including anything severed from land; or (c) a document, including money, that represents or embodies anything of value. *Id.* § 31.01(5).

Here, Plaintiff alleges that based on the parties' course of dealing, Plaintiff had a 60% interest[6] in the receivables of OneSolution Consulting. Doc. 1, Pl.'s Orig. Compl. ¶ 41. Plaintiff alleges that Defendant unlawfully appropriated Plaintiff's share in the receivables by failing to give them to Plaintiff and using them without Plaintiff's consent. *Id.* ¶ 42. And Plaintiff states that this caused him damages. *Id.* ¶ 44.

Taken as true, Plaintiff's allegations establish that Defendant appropriated Plaintiff's share

---

[6] The Court is unclear on how Plaintiff concludes that he had a 60% interest in the receivables. Plaintiff initially stated that he was entitled to 70% of the difference between the receivables and the amount he initially loaned. Doc. 1, Pl.'s Orig. Compl. ¶ 8. His entitlement to 70% of the difference does not necessarily mean that he had a 60% interest in the receivables, but the discrepancy can be addressed upon Plaintiff's opportunity to supplement the record.

of the receivables with the intent to permanently deprive him of them; that Defendant did not have Plaintiff's consent to keep and use his share of the receivables; and that Plaintiff suffered actual damages. Thus, Plaintiff has established a viable claim under the TTLA that is sufficiently based in the pleadings. *See Nishimatsu Constr.*, 515 F.2d at 1206. Plaintiff's entitlement to damages will be discussed in a separate section below.

### 4. Equitable Claims

Plaintiff brings several equitable claims: (1) unjust enrichment; (2) quantum meruit; and (3) money had and received. Doc. 1, Pl.'s Orig. Compl. ¶¶ 24–29, 47–50. Quasi-contractual claims such as those for quantum meruit and unjust enrichment are based on the absence of an express agreement. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). "Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements." *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex.App.—Dallas 2005, no pet.) (citing *Fortune*, 52 S.W.3d at 683). As an express contract governs the loan from Plaintiff's IRA account, the Court construes Plaintiff's theories of equitable relief as alternative theories for the loan from Plaintiff's savings account.

First, with regard to Plaintiff's unjust enrichment claim, district courts in the Fifth Circuit have found that unjust enrichment is not an independent cause of action, but rather a theory of liability that a plaintiff can pursue through several equitable causes of action. *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (collecting cases). Therefore, the Court will consider Plaintiff's claim for unjust enrichment as a theory of liability through which Plaintiff is pursuing his other equitable causes of action—quantum meruit and money had and received.

Under Texas law, a quantum meruit theory is based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). To recover, a plaintiff must establish that: "(1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Id.* The measure of damages in quantum meruit is the "reasonable value of the work performed." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (quoting *Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex.App.—Dallas 2008, no pet.)).

Here, Plaintiff alleges that he loaned money to Defendant, Defendant received the benefit of Plaintiff's loans, and Plaintiff expected to be paid because the parties had been operating under their arrangement for several years. Doc. 1, Pl.'s Orig. Compl. ¶ 25. Plaintiff does not cite to any case law establishing that a loan is considered a "service" for the purpose of bringing a quantum meruit claim. Indeed, if a loan were considered a "service," the measure of damages—reasonable value of the work performed—and the way to go about proving them—through witness testimony—would be irrelevant because the value of the loan would be clear without the need for testimony concerning the reasonable value for services. *See Johnston*, 261 S.W.3d at 902 (noting that "reasonable value" may be established through lay testimony). Because Plaintiff does not establish that loaned money qualifies as a "service," the Court finds that there is a sufficient basis in the pleadings to recover under this theory.

A claim for money had and received is an equitable claim that is based on the justice of the case rather than on wrongdoing. *BAC Home Loans Serv., LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 914 (S.D. Tex. 2012) (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1

(Tex. 2007)). It "may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *Id.* (quoting *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.)).

Plaintiff alleges that 60% of the money from the receivables of OneSolution Consulting belong to Plaintiff and were misappropriated by Defendant. Doc. 1, Pl.'s Orig. Compl. ¶ 48. By failing to turn over money that Plaintiff had a right to, Plaintiff alleges that Defendant owes Plaintiff the amount of money received. *Id.* ¶ 49. Taken as true, Plaintiff's allegations are sufficient to make out a claim for money had and received. *See Nishimatsu Constr.*, 515 F.2d at 1206. Any damages that Plaintiff may be entitled to will be discussed below in a separate section.

C.   *Damages*

Although a default judgment against a defendant conclusively establishes its liability, it does not establish the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)(noting that after default the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages). Accordingly, it remains Plaintiff's burden to provide an evidentiary basis for the damages it seeks.

    1.   Actual Damages

Damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, however, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

        i.   *Damages under the Promissory Note*

In support of its request for damages regarding the Promissory Note, Plaintiff attaches the Note. Doc. 15-1, Promissory Note. The Note indicates that Defendant promised to pay the principal sum of $742,713.00. This amount is clear without the need for an evidentiary hearing. The amount of interest Plaintiff requests is less clear, however. The Note provides the following:

> For value received, [Defendant] . . . promise[s] to pay . . . the principle sum of seven hundred and forty two thousand seven hundred and thirteen dollars ($742,713) and interest from fifty seven thousand two hundred and eighty seven dollars ($57,287) on balance of principal remaining from time to time unpaid at the rate often per cent annum (8%), such principle sum and interest of eight hundred thousand dollars ($800,000) to be payable on the 2nd day of December 2014.

Doc. 15-1, Promissory Note. As the Note states that $800,000 was due on December 2, 2014, the Court is unclear on why Plaintiff asks for the principal amount of $742,713 and interest in the amount of $52,823.28.[7] At first glance, it appears to the Court that the $57,287 encompasses interest accrued prior to the execution of the Note and the 8% rate would begin to apply after default. If this is the case, then it is unclear why Plaintiff calculated interest from the date the Note was executed rather than the date the Note was past due. If this is not the case, the Court gives Plaintiff the opportunity to supplement the record with additional evidence.

    ii.    *Damages Not Contemplated by the Promissory Note*

Plaintiff also seeks $442,460.00. This amount was not covered by the Promissory Note, but rather an implied contract. It also appears that this amount may be the same as the amount Plaintiff

---

[7] Plaintiff requests interest of $29,708.52 for interest between September 2, 2014 through March 3, 2015, and interest of $23,114.76 for interest between March 4, 2015 through July 23, 2015; together those numbers total $52,823.28. Doc. 15-1, Crawford Decl. Ex. 1. It is not immediately evident why Plaintiff divided time into two parts or why March 3, 2015 has special significance. The Court is also unclear about Plaintiff's calculation of interest between September 2, 2014 and March 3, 2015. The Court calculated $29,625.96 after it multiplied $162.78 by 182 days. There is only an $82.56 difference between the calculations.

seeks as "actual damages" for his claims of money had and received, fraud, and violations of the TTLA. But the Court cannot be certain that is what Plaintiff requests. Without more evidence, the Court is unable to award Plaintiff damages at this time.

And Plaintiff's statement that Defendant owed him $442,460.00 in unpaid loans may fall short of the requirement that a court determine damages with mathematical calculation. Because of the nature of the parties' implied agreement and how Plaintiff is owed 70% of the difference between what Plaintiff lent and what Defendant's clients' paid, the Court would likely need to know how much was loaned from Plaintiff's savings account with each transaction, and how much was received by Defendant's clients. Thus, the Court does not find it appropriate to award $442,460.00 before Plaintiff has an opportunity to supplement the record with more evidence.

2. Exemplary Damages

In his Complaint, Plaintiff seeks exemplary damages in connection with his fraud claim and money had and received claim, but he does not request a certain amount. Doc. 1, Pl.'s Orig. Compl. ¶¶ 39, 50. "Texas courts have permitted entry of default judgment on claims for exemplary damages where the plaintiff has pleaded and presented evidence of the basis for such relief." *Kennolyn Camp v. Wilson*, 2017 WL 933129, at *3. But in Plaintiff's Motion for Default Judgment he expressly waived his rights to exemplary damages. Doc. 16, Mem. of Law in Supp. of Pl.'s Mot. for Default J. ¶ 28.

3. Attorneys' Fees

The Texas Civil Practice and Remedies Code permits an award of reasonable attorneys' fees to a prevailing party on a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8). "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which

attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)). Plaintiff is also permitted to an award of attorneys' fees by virtue of prevailing on the TTLA claim. Tex. Civ. Prac. & Rem. Code § 134.005(a).

The determination of a fee award is a two-step process. "First, the court calculates the 'lodestar' which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (citations omitted). In so doing, the Court should exclude all time that is excessive, duplicative, or inadequately documented. *Id.* Second, the Court can adjust the lodestar based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Plaintiff requests $21,263.75 in attorneys' fees. Doc. 16, Mem. of Law in Supp. of Pl.'s Mot. for Default J. ¶ 28. Plaintiff provides a breakdown of the tasks performed, by which attorney, and for what rate. *See* Doc. 15-1, Invoices Ex. C. This is sufficient information for the Court to calculate the correct lodestar amount. The Court's concern, however, is not with the lodestar amount but with the *Johnson* factors. Plaintiff's request of $21,263.75 seems excessive in light of several factors. In

particular, the time and labor required for litigation element and the amount of the award in similar cases element. As the Defendant in this case never answered, Plaintiff only had to file his Complaint, serve Defendant, and file a Motion for Default Judgment. This does not appear to be a case requiring intensive time and labor. Furthermore, $21,263.75 is excessive in light of similar cases.

As the Court requires Plaintiff to supplement the record for actual damages, the Court will allow Plaintiff to supplement the record with regard to attorneys' fees and address the relevant *Johnson* factors.

4. Costs

Plaintiff requests costs in the amount of $3,059.38 as well as a conditional award of $5,000 for an appeal. Doc. 16, Mem. of Law in Supp. of Pl.'s Mot. for Default J. ¶ 28. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (quoting *Cook Children's Med. Ctr. v. The New England PPO Plan of Gen. Consolidation Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007)).

While Plaintiff provides an itemized list of all costs incurred in preparing for this case, the Court does not immediately agree that they are as high as Plaintiff claims. For example, it does not appear that computerized research fits within what the statute considers costs. *See* Doc. 15-1,

Invoices Ex. C. Without the computer research, then, the costs are much lower than Plaintiff represents. Furthermore, Plaintiff does not provide any authority supporting its request for $5,000 for an appeal. At this point, the Court is not denying Plaintiff's full request for costs, but the Court does require more evidence before it will award the full amount.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**. While Default Judgment is appropriate, the evidence before the Court is insufficient[8] to award damages that can be determined through mathematical calculation. Therefore, Plaintiff may supplement the record with additional evidence on or before **Friday, June 2, 2017**.

**SO ORDERED.**

**SIGNED: May 2, 2017**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[8] The Court notes that the evidence supporting an award for the principal amount under the Note is sufficient, but the Court is deferring its award of that amount until after Plaintiff supplements the record with evidence of other damages.